IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALONZO COLEY,                             *
        Plaintiff,
    v.                                    *   CIVIL ACTION NO. DKC-11-1504

C.O. II HARRIS, et al.,                    *
        Defendants.
                               ***

## **MEMORANDUM OPINION**

Pending is Defendants C.O. II Harris and Lt. Gallagher's Motion to Dismiss or for Summary Judgment, Plaintiff's response, and Defendants' Reply. ECF Nos. 8, 12, & 15. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be denied.

**Background**

Plaintiff alleges that he was subjected to excessive force by Defendants. Specifically, Plaintiff alleges that on April 5, 2011, when he returned to his cell from sick call he informed the escorting officer that there was a problem regarding his meal and advised him that he would not lock in to his cell until he received his "full" tray. The officer called for assistance and Defendants Harris and Gallagher responded. Plaintiff explained to them the problem with his meal. Plaintiff states that Gallagher directed him to lock into his cell but Plaintiff refused to do so without his food. Plaintiff states that "the Lt. attacked me, I slipped the cuffs and managed to back away." He further states that he then fell to the ground and placed his hands under his body. After his hand was removed from under him he alleges that Harris repeatedly slammed his knee onto Plaintiff's hand. He also claims that after he had been handcuffed Gallagher continued to choke him. ECF Nos. 1 & 12.

The record evidence demonstrates that on April 5, 2011, Plaintiff was assigned to the disciplinary segregation unit. Inmates on the unit were dissatisfied because their lunch food trays

contained only one grilled cheese sandwich, rather than two. Plaintiff, who had been scheduled for a sick call visit, had refused to accept his food tray prior to attending sick call. Plaintiff was escorted back to his cell, following sick call, at approximately 11:00 a.m. by CO Brent Sharp. Per disciplinary segregation protocol, Plaintiff was handcuffed with his arms behind his back during the escort. When he reached his cell, Plaintiff refused to enter. Sharp radioed for assistance and Gallagher and Harris responded. Gallagher directed Plaintiff to enter his cell. Plaintiff refused to enter his cell until he received a bag lunch or another tray lunch. Gallagher advised Plaintiff that he was not entitled to a bag lunch because he had earlier refused his tray lunch. Harris and Gallagher each took one of Plaintiff's arms and began walking him into his cell. Plaintiff slipped one hand out of the handcuffs and swung at Defendants.[1] Plaintiff missed and the officers took him to the ground. Plaintiff refused to be re-handcuffed and placed his hands under his body, resisting efforts to handcuff him. After a struggle Defendants succeeded in re-handcuffing Plaintiff while CO Sharp and CO Persinger placed leg irons on Plaintiff. Plaintiff was placed in a staff alert cell and evaluated by medical staff. During the struggle Plaintiff kicked Sharp in the mouth, splitting his lip. Defendants deny attacking, choking, punching, or pinning Plaintiff's hand. ECF No. 8, Exs. A, B, D, E, F, G, & M.

Meredith Rathkamp, R.N. assessed Plaintiff at 11:20 a.m. She noted that Plaintiff refused a "full assessment" and taking of his vital signs. Nurse Rathkamp noted Plaintiff was "extremely belligerent" and became increasingly agitated, leading to the termination of the assessment. Plaintiff "denied head injury" to Nurse Rathkamp and stated he did not know if he was bleeding anywhere.

---

[1] In his opposition, Plaintiff disputes throwing a punch at Defendants. He again recounts that he refused to lock into his cell, slipped one hand out of his handcuffs, and once on the floor, refused to submit to handcuffing. He maintains that Defendants attempted to pull him into his cell by his hair. He further maintains that once on the floor Defendants kneed and punched him in the back and slammed a knee on this left hand. ECF No. 12., Ex. B.

Plaintiff complained of pain in his left arm and numbness, but advised the nurse "this was the result of an injury years ago."[2] He denied any other pain. The nurse observed no injuries on Plaintiff. ECF No. 8, Ex. H, I, K. The following day Plaintiff was evaluated by a nurse. A "small bruise on the [left] wrist…approx[imately] 1 cm in diameter at the base of the [left] thumb" was observed. No other injuries were noted. *Id*., Ex. Q.

As a result of the incident Plaintiff was charged with violating Disciplinary Rule 101--engaging in acts of violence toward staff; Rule 312--interfering with or resisting the performance of duties by an employee; Rule 400--disobeying a lawful order; and Rule 401--refusing a housing assignment. Plaintiff pled guilty to violating Rules 312, 400, and 401 and, after a hearing, was found guilty of violating Rule 101. ECF No. 8, Ex. M.

**Standard of Review**

Under revised Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if

---

[2] Plaintiff's complaints of nerve damage in his hand predate this incident. *See*, ECF No. 8, Ex. H, J, K, indicating complaints of neuropathy in left forearm from as early as December 17, 2009.

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment.  *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted).   Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**Discussion**

A.  Administrative Remedies

The court must first examine Defendants' assertion that Plaintiff's case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied

relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

The facts regarding Plaintiff's efforts to exhaust his administrative remedies are in dispute. Plaintiff filed a request for administrative remedy with the warden on April 22, 2011. ECF No, 8, Ex. J. The ARP was dismissed by the warden, because "Inmates may not seek relief through the Administrative Remedy Procedure regarding disciplinary hearing procedures and decisions." Defendants maintain that Plaintiff failed to appeal this dismissal. Plaintiff has, however, filed a copy of his appeal of the procedural dismissal. ECF No. 12, Ex. A. The appeal was dismissed as untimely. Given Plaintiff's efforts to pursue his administrative remedies and that he was specifically advised that he could not grieve the incident through the administrative process, the court cannot say based on the evidence before it that Plaintiff failed to exhaust his "available" remedies. *See Taylor v. Barnett*, 105 F.Supp.2d 483, 486 (E.D. Va. 2000).

B.    Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens,* 130 S. Ct. at 1177.

The uncontroverted portion of the record reveals that the use of force was prompted by Plaintiff's refusal to follow direct orders to enter his cell because he was upset that he did not receive a sufficient number of sandwiches. Plaintiff further admits that, when officers responded and began to use force physically to move him into his cell, he resisted their effort by slipping his handcuffs. Plaintiff was taken to the ground and by his own admission continued to resist efforts to secure him by placing his arms under his body so that he could not be handcuffed. There are genuine disputes of material fact concerning what then occurred between the parties. Plaintiff maintains that after he was subdued Defendants continued to choke and hit him. Defendants deny doing so. There exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably re resolved in favor of either party," as such summary judgment is inappropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("Credibility determinations…are jury functions, not those of a

judge…."). Further, if the actions of Defendants occurred in the manner alleged by Plaintiff, qualified immunity would not apply.

## Conclusion

For the aforementioned reasons, summary judgment cannot be granted at this time . Counsel shall be appointed for Plaintiff. A separate Order follows.

Date:   January 18, 2012                                /s/
                                                                 DEBORAH K. CHASANOW
                                                                 United States District Judge