IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALONZO COLEY                          :

                                  :

    v.                :   Civil Action No. DKC 11-1504

                                  :

DONALD GALLAGHER, et al.              :

                                  :

**MEMORANDUM OPINION**

Presently pending and ready for review in this prisoner's civil rights case is the motion to dismiss or for summary judgment[1] filed by Defendants the State of Maryland (the "State"), Correctional Lieutenant Donald Gallagher, and Correctional Officers Melvin Harris and Brent Sharp. (ECF No. 26). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

---

[1] The only evidentiary material presented applies to the exhaustion of administrative remedies claim. The other arguments are addressed by the motion to dismiss.

## I.   Background

### A.   Factual Background[2]

Plaintiff, an inmate housed at Eastern Correctional Institution ("ECI"), of the Maryland Division of Correction, alleges that he was subject to a beating at the hands of Defendants Gallagher, Harris, and Sharp, together, (the "Officers"). (ECF No. 21).   On April 5, 2011, while Plaintiff was escorted from a "sick call" to his cell, Plaintiff and Defendant Sharp had a disagreement about the lunch Plaintiff was to receive that day.   Plaintiff alleges that in the course of the disagreement, Sharp and Harris held him by his arms, and Gallagher punched him in the back of the head.   (*Id.* at 4). Plaintiff alleges that Gallagher then grabbed him by the hair to drag him into his cell.   While Plaintiff lay on the ground, Gallagher and Harris kneed, punched, and choked Plaintiff, even after Plaintiff was handcuffed and subdued.   Plaintiff was then stripped naked, forced to his knees, and examined by a nurse, while "Gallagher maintained a wrist bending technique on the

---

[2] The facts underlying Plaintiff's claims are outlined more fully in a previous memorandum opinion, and familiarity with the facts are presumed.   (ECF No. 16); *Coley v. Harris*, No. 11-1504, 2012 WL 171661, at *1 (D.Md. Jan. 19, 2012).

Plaintiff throughout the entire assessment."[3]   (*Id.* at 5). Plaintiff was ultimately returned to his cell.

Defendants offer a starkly different version of the facts, asserting that when Plaintiff refused to obey Gallagher's order to enter his cell, Plaintiff slipped his handcuffs and actively resisted.  (ECF No. 8-1, at 1-2).  They further assert that Plaintiff was never attacked, punched, "slammed on the hand," or choked.  (*Id.*).

Plaintiff filed a request for administrative remedy ("ARP") with the warden on April 22, 2011.  (ECF No. 26-2).  The warden dismissed the ARP, because "Inmates may not seek relief through the Administrative Remedy Procedure regarding disciplinary hearing procedures and decisions."  Plaintiff then untimely filed an appeal of this decision.  (ECF No. 12-1).

**B.   Procedural Background**

Plaintiff filed a *pro se* complaint on June 2, 2011 against Defendants Gallagher and Harris, alleging that he was subject to excessive force, in violation of his Eighth Amendment rights. (ECF No. 1).  Plaintiff is proceeding *in forma pauperis* (ECF No. 4).  Gallagher and Harris filed a motion to dismiss, or for

---

[3] Plaintiff's amended complaint is silent as to the nurse's gender.  In his opposition to Defendants' motion he specifies that the nurse's name is Meredith Rathcamp.  (ECF No. 29, at 5). Construing the facts in the light most favorable to the Plaintiff, it will be assumed that the nurse is female.

summary judgment (ECF No. 8), which was denied (ECF Nos. 17 & 18).   Counsel was appointed for Plaintiff (*id.*), and Plaintiff filed an amended complaint (ECF No. 21).   The amended complaint added Defendants Sharp and the State of Maryland, and additional claims for violations of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution; statutory claims under 42 U.S.C. §§ 1983 & 1988, and 18 U.S.C. § 245; and state common law claims for battery against all Defendants.[4]   Defendants filed a motion to dismiss the amended complaint, or, in the alternative, for summary judgment.   (ECF No. 26).   Plaintiff opposed (ECF No. 29), and Defendants replied (ECF No. 33).

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint.   *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Accordingly, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).   The court need not take everything as true, however.

---

[4] Plaintiff asserts battery claims against the Officers in their individual capacities.   Defendants have not moved to dismiss or for summary judgment as to these claims. Accordingly, Count Three of the amended complaint will remain.

For instance, the court need not accept unsupported legal allegations. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). And if the properly considered facts show nothing more than the "mere possibility of misconduct," the complaint should not survive a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 679 (quotation marks omitted).

## III. Analysis

### A.   Exhaustion of Administrative Remedies

Defendants argue that all of Plaintiff's constitutional claims against all Defendants should be dismissed due to Plaintiff's failure to exhaust available administrative remedies. Plaintiff contends that administrative remedies were not available to him.

The Prison Litigation Reform Act ("PLRA") generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are*

5

*available* are exhausted." (Emphasis added). The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. Under the PLRA, Defendants must raise lack of exhaustion as an affirmative defense, and they bear the burden of proof on this issue. *Jones v. Bock*, 549 U.S. 199, 211-13 (2007).

Defendants have submitted Plaintiff's ARP and other documents related to the administrative review process to support their arguments. Plaintiff also cites to the ARP in support of his arguments. Summary judgment is appropriate if materials outside of the pleadings, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (exhaustion of "all available" administrative

remedies is mandatory under the PLRA); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943–44 (D.Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the Bureau of Prison's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief").

In Maryland, filing an ARP with the warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md.Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Code Regs. 12 § 07.01.03.

After completing the first step of the administrative process by filing an ARP, Plaintiff was told categorically that the subject matter of his complaint could not be resolved through the ARP process. *Woodford* and *Booth* do not require exhaustion of administrative remedies where there is no

possibility of any relief for the action at issue. *Woodford*, 548 U.S. at 85; *Booth*, 532 U.S. at 738-39.   Because Plaintiff was told that no relief was available through the administrative process for the facts underlying his allegations, exhaustion was not required.[5]   *See Zlotorzynski v. Bozman*, No. DKC-10-2120, 2011 WL 5150854, at *3 (D.Md. Oct. 27, 2011) (no exhaustion required where, as here, plaintiff's ARP complaint was returned with the stamp "Inmates may not seek relief through the Administrative Remedy Procedure regarding disciplinary hearing procedures and decisions"); *cf. Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) ("An administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it") (citing *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010); *Curtis v. Timberlake*, 436 F.3d 709, 712 (7th Cir. 2005); *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002)).   Therefore, Defendants here have not shown as a matter of law that Plaintiff failed to exhaust his administrative remedies.

---

[5] Defendants also assert that Plaintiff did not exhaust his administrative remedies as to his Fourth, Fifth, and Fourteenth Amendment claims against all Defendants, as well as all claims against Defendant Sharp, because neither those claims nor Sharp were specifically listed in Plaintiff's ARP.   Because administrative remedies were not available to him, this defense as to these claims and Defendant Sharp is without merit.

**B.    Claims Against the State and Officers in Their Official Capacities**

Defendants argue that Plaintiff's claims against the State and the Officers in their official capacities are barred by sovereign and Eleventh Amendment immunity:  claims for excessive force under the Eighth Amendment; unreasonable search under the Fourth Amendment; violation of substantive due process rights under the Fifth and Fourteenth Amendments; failure to supervise as to all underlying constitutional claims; and common law battery against the State only.

A suit against a state official in his official capacity "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suits in federal court for monetary damages against a state or state officials acting in their official capacity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003); *Lewis v. Bd. of Ed*., 262 F.Supp.2d 608, 612 (D.Md 2003).  Three exceptions exist to a state's sovereign immunity, none of which are present in this case.  First, a state may waive its immunity and consent to suit in federal court. *Green v. Mansour*, 474 U.S. 64, 68 (1985).  Although the State of Maryland has waived its sovereign immunity for certain types of actions brought in state court pursuant to the Maryland Tort Claims Act, *see* Md. Code Ann., State Gov't § 12-104, it has not

waived its Eleventh Amendment immunity for actions brought in federal court, *see id.* § 12-103(2).

Second, immunity does not bar a suit against a state official when a plaintiff is seeking prospective relief to end a continuing violation. *Ex Parte Young*, 209 U.S. 123, 167 (1908). That exception does not apply in this case. Finally, Congress may validly abrogate a state's Eleventh Amendment immunity, but it has obviously not done so here. *Seminole Tribe of Florida v. Florida*, 517 U.S 44, 55 (1996). Therefore, none of the possible exceptions apply in this case and the excessive force, unreasonable search, substantive due process, failure to supervise, and battery claims against the State and the Officers in their official capacities must be dismissed.

Further, recognizing that he cannot bring a § 1983 claim against the State based on *respondeat superior* liability, *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690-95 (1978), Plaintiff instead alleges that the Officers' actions "illustrate[] the deliberate indifference manifested by systemic and grossly inadequate instruction, training, and the lack of adequate supervision, control, discipline, and policies on the part of Defendant State of Maryland." (ECF No. 21 ¶ 48).

The State "may be found liable under 42 U.S.C. § 1983 only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury." *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 321 (4th Cir. 2009). Plaintiff alleges no facts in support of his assertion that Defendant Officers' actions are indicative of an "official policy." Therefore, the State of Maryland cannot be liable for the Officers' actions on this basis. Consequently, Counts Two and Four, Plaintiff's claims for battery and federal civil rights violations against the State of Maryland, as well as all claims against the Officers in their official capacities in Count One: excessive force under the Eighth Amendment; unreasonable search under the Fourth Amendment; violation of substantive due process rights under the Fifth and Fourteenth Amendments; and failure to supervise as to all underlying constitutional claims, must be dismissed.

> **C.   Constitutional Claims against Defendant Officers in Their Individual Capacities**

Defendants argue that all of Plaintiff's constitutional claims against Defendant Sharp should be dismissed, and that his Fourth, Fifth, and Fourteenth Amendment claims against Defendants Gallagher and Harris should be dismissed. Defendants further argue that they are entitled to qualified immunity as to all of these claims.

1.   **Excessive Force Claim against Sharp**[6]

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Supreme Court has held that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, ---- U.S. ----, ----, 130 S.Ct. 1175, 1176 (2010).

To succeed on an excessive force claim, Plaintiff must show that the Officers "inflicted unnecessary and wanton pain and suffering" on him. *Whitley v. Albers*, 475 U.S. 312, 320 (1986); *accord Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008); *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006). Force becomes constitutionally excessive when "it was carried out 'maliciously and sadistically' rather than as a part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 130 S.Ct. at 1180 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Other factors worthy of consideration in determining whether the "constitutional line has been crossed" include "the need for the application of force, the relationship between the need and the amount of force used, [and] the extent of the injury inflicted."

---

[6] Plaintiff's Eighth Amendment claims against Gallagher and Harris were addressed in an earlier memorandum opinion and order. (ECF Nos. 16 & 17); *Coley*, 2012 WL 171661.

*Orem*, 523 F.3d at 446 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2$^d$ Cir. 1973)).

The allegations of the amended complaint are sufficient to state a claim that the force the Officers used against Plaintiff was excessive.  The picture painted is one in which the Officers launched a largely unprovoked attack that continued well after any threat that Plaintiff posed was neutralized.  As the United States Court of Appeals for the Fourth Circuit explained in the analogous context of arrestees, it cannot be said, "as a matter of law, that knocking down, punching, and kicking an [individual] while he is in handcuffs are actions taken in good faith to restore order."  *McMillian v. Wake Cnty. Sheriff's Dep't*, 399 Fed.App'x 824, 828 (4th Cir. 2010) (citations omitted).

Officer Sharp contend that the complaint does not support a claim that he used excessive force against Plaintiff because in Plaintiff's ARP he states "Sharp never ass[a]ulted me and conducted hi[m]self in a professional manner throughout the incident." (ECF No. 26-1, at 14-15).  In his amended complaint, however, Plaintiff alleges that Officer Sharp held Plaintiff while he was beaten, and that all Officers acted in concert to effectuate the beating.  Construing the allegations in Plaintiff's favor, the complaint alleges that Sharp was involved

in the alleged beating, rendering dismissal as to him inappropriate at this time.

Sharp also contends that his actions during the altercation are protected by qualified immunity. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether qualified immunity applies, the court must make two determinations. First, it must consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the complaint alleges facts to support the finding of a violation of a constitutional right, the court should assess whether the right was "clearly established" at the time of the events at issue. *Id.*[7]

As explained above, Plaintiff has made a sufficient showing at this stage that Sharp violated his Eighth Amendment rights by employing excessive force. The only remaining question then is

_____

[7] The court may decide which question to consider first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

whether the right was clearly established at the time of the events, such that the Officers had "'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006).   "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998), *aff'd*, 526 U.S. 603 (1999).   If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability.

Sharp has not established that he is entitled to qualified immunity.   A reasonable officer in early 2011 would obviously have understood that a brutal, unprovoked attack on a handcuffed prisoner would violate that prisoner's constitutional rights. *See, e.g., Short v. Walls*, No. 07-00531, 2009 WL 914085, at *9 (S.D.W.Va. Mar. 31, 2009) ("The administration of a beating for purposes other than to restore or maintain prison security or the plaintiff's own safety violates clearly established law."). If the facts Plaintiff alleges prove true, qualified immunity

could not apply.   Therefore, Plaintiff's excessive force claim against Sharp in his individual capacity included in Count One of the amended complaint will not be dismissed.

### 2.   Unreasonable Strip Search

Plaintiff asserts that the Officers stripping him naked, forcing him to his knees, and subjecting him to a medical exam at the hands of a nurse constitutes a violation of his Fourth Amendment rights.[8]   Defendants argue that Plaintiff's complaint is insufficient to support this claim.

Prisoners have a cognizable, though minimal, Fourth Amendment right to be free from unreasonable searches.  *Jackson*, 393 Fed.App'x at 354 (acknowledging limited Fourth Amendment right to be free from strip searches in narrow circumstances) (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)); *Hamer v. Jones*, 364 Fed.App'x 119, 125 (5th Cir. 2010) ("strip search of a male prisoner by a female guard in the absence of exigent circumstances presents a colorable Fourth Amendment claim") (citations omitted); *cf. Hudson v. Palmer*, 468 U.S. 517, 527 (1984) (prisoners lack any Fourth Amendment privacy rights to

---

[8] Plaintiff brings this claim under both the Eighth and Fourth Amendments.   The Fourth Amendment governs this claim. *Jackson v. Herrington*, 393 Fed.App'x 348, 354 (6th Cir. 2010) (dismissing prisoner's Eighth Amendment strip search claim, but examining claim under the Fourth Amendment); *Ames v. Brown*, No. 05-6389, 2006 WL 1875374, at *3 n. 10 (10th Cir. July 7, 2006) (affirming that prisoner's claims for unconstitutional strip search are governed by Fourth, not Eighth Amendment).

protect them from searches of prison cells). Under the Fourth Amendment, a search is reasonable if the need for the search outweighs the invasion of personal rights that the search entails. *See Bell*, 441 U.S. at 559 (courts should consider the scope of intrusion, the manner in which the search is conducted, the justification for the search, and the place in which it is conducted). The *Bell* Court specifically upheld a policy providing for a visual body cavity search of prison inmates, finding that prisons are places fraught with serious security dangers in which inmates attempt to secrete contraband by concealing it in body cavities. *Id.*

Strip searches of convicted persons do not amount to a violation of privacy rights, as long as the genitals of the persons being searched are not involuntarily and unjustifiably exposed to members of the opposite sex. *See Hamer*, 364 Fed.App'x at 125; *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981)(same); *French v. Smith*, No. CCB-08-3476, 2012 WL 831881, at *5 n. 4 (D.Md. Mar. 9, 2012) (same); (*Elliott v. Williams*, No. DKC-08-2159, 2009 WL 2905729, at *5 (D.Md. Sept. 3, 2009) (same); *see also Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) ("recognizing a prisoner's constitutional right to bodily privacy because most people have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially

demeaning and humiliating") (internal quotation and citation omitted); *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (recognizing that prisoners retain a limited right of privacy in not being subjected to a strip search in front of people of the opposite sex).

Defendants cite to *Florence v. Bd. Of Chosen Freeholders of Cnty. of Burlington*, --- U.S. ----, ----, 132 S.Ct. 1510, 1518 (2012) in support of their assertion that the Plaintiff's rights were not constitutionally protected because "[i]t may be difficult to identify and treat injuries until detainees removed their clothes for a visual inspection."[9]  While the need for a medical examination may be present in Plaintiff's case, given the alleged injuries to his head, face, and throat, Defendants do not provide any justification for immediately stripping him naked in front of, and subjecting him to an examination at the hands of, a female nurse.

The Officers also do not show that they are entitled to qualified immunity on this count.  A correctional officer in

---

[9] *Florence* is further distinguishable from Plaintiff's case because there, the need to identify injuries was at intake on arrest, where jail officials would have no knowledge of the detainee's health status, thus requiring a full body search. 132 S.Ct. at 1518.  Here, Plaintiff was in prison custody, was healthy prior to the altercation, and did not complain of injury to his genitals.  Therefore, any justification for a nude, full body medical examination is much more attenuated.

early 2011 would have known that he could not strip a prisoner naked in front of a nurse of the opposite sex without a justifiable need for him to be stripped.  If Plaintiff's version of events proves true, qualified immunity would not apply.

Because the facts as alleged do not demonstrate the need for a strip search and examination of Plaintiff, while nude, at the hands of a female nurse, Plaintiff's Fourth Amendment claim against the Officers in their individual capacities included in Count One of the amended complaint will not be dismissed.

### D.   Due Process Claims

Plaintiff alleges a due process claim against all defendants arising under both the Fifth and Fourteenth Amendments.  Because Plaintiff has alleged claims only against the State and state officials, Plaintiff's claim is properly analyzed only as a claim pursuant to the Due Process Clause of the Fourteenth Amendment, which applies to the states.  For this reason, all Fifth Amendment Claims will be dismissed.  *See Pelzer v. McCall*, No. 10-2484, 2012 WL 591385, at *6 n. 6 (D.S.C. Jan. 25, 2012) (applying Fourteenth Amendment to prisoner's due process claim brought under both Fifth and Fourteenth Amendments where action is brought only against state prison and state officials).

Defendants point out that Plaintiff does not specifically allege any fundamental privacy right under the substantive due

process clause of the Fourteenth Amendment.  As discussed above, Plaintiff's right to be free from correctional officers' use of excessive force finds its source in the Eighth Amendment, and his right to be free from an unreasonable search is addressed by the Fourth Amendment.  *See Oliver v. Scott*, 276 F.3d 736, 744-45 (5th Cir. 2002) (examining prisoner's privacy rights under Fourth Amendment and refusing to acknowledge fundamental right "for prisoners not to have members of the opposite sex view them naked" in a Fourteenth Amendment substantive due process analysis); *Gardner v. Devenyns*, No. 11-2725, 2012 WL 706850, at *3 (D.Md. Mar. 2, 2012) (noting that convicted prisoners' right to be free from officers' use of excessive force is rooted in Eighth Amendment protections, while pre-trial detainee's analogous right is provided by the Fourteenth Amendment).  "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Albright*, 510 U.S. at 273.  Because the Fourth and Eighth Amendments provide "an explicit textual source" for Plaintiff's constitutional claims, the Fourteenth Amendment does not provide an alternative basis for those same claims.  *Evans v. Chalmers*, --- F.3d ----, Nos. 11-1436, 11-

20

1438, 11–1453, 11–1458, 11–1460, 11–1465, 2012 WL 6554846, at *5 n. 2 (4th Cir. Dec. 17, 2012).

Plaintiff does not allege that Defendants' conduct violated a separate and specific fundamental right protected by the substantive due process clause of the Fourteenth Amendment, so this claim against the Officers in their individual capacities included in Count One of the amended complaint will be dismissed.

### E.   Failure to Supervise

Plaintiff claims that the Officers' actions give rise to a claim for failure to supervise.  (ECF No. 21 ¶ 41).  Presumably, this claim is brought against Lt. Gallagher, in his individual capacity, as the officer senior to Officers Harris and Sharp. For a failure to supervise to give rise to § 1983 liability as to all underlying valid constitutional claims, Plaintiff "must allege facts showing the defendant either encouraged the specific incident of misconduct or in some other way directly participated in it." *Broyles v. Corr. Med. Servs., Inc.*, 478 Fed.App'x 971, 977 (6th Cir. 2012) (quotations and citations omitted); *see also Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007) ("A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or

supervise the subordinate who caused the violation.") (citations omitted).

Plaintiff has alleged facts that would support a finding that Lt. Gallagher failed to supervise Sharp and Harris in this incident. Therefore, this claim against Lt. Gallagher in his individual capacity included in Count One of the amended complaint will not be dismissed.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss or for summary judgment filed by Defendants Donald Gallagher and Melvin Harris will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
