IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALONZO COLEY                          :

                                      :

        v.                            :  Civil Action No. DKC 11-1504

                                      :

MELVIN HARRIS, et al.                 :

                                      :

### MEMORANDUM OPINION

Presently pending and ready for resolution in this prisoner civil rights case is the motion for summary judgment filed by Defendants Donald Gallagher, Melvin Harris, and Brent Sharp. (ECF No. 55). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. Defendants' motion will be denied.

## I.    Background[1]

Plaintiff, an inmate housed at Eastern Correctional Institution ("ECI") of the Maryland Division of Correction, alleges that he was subject to a beating at the hands of Defendants Gallagher, Harris, and Sharp ("Defendants" or "the Officers"). (ECF No. 21). On April 5, 2011, while Plaintiff was escorted from a "sick call" to his cell, Plaintiff and Defendant Sharp had a disagreement about the lunch Plaintiff was

---

[1] The facts underlying Plaintiff's claims are outlined more fully in a previous memorandum opinion, and familiarity with the facts are presumed. (ECF No. 16); *Coley v. Harris*, No. DKC 11-1504, 2012 WL 171661, at *1 (D.Md. Jan. 19, 2012).

to receive that day.  Plaintiff alleges that in the course of the disagreement, Sharp and Harris held him by his arms, and Gallagher punched him in the back of the head.  (*Id.* at 4).  Plaintiff alleges that Gallagher then grabbed him by the hair to drag him into his cell.  While Plaintiff lay on the ground, Gallagher and Harris kneed, punched, and choked Plaintiff, even after Plaintiff was handcuffed and subdued.  Plaintiff was then stripped naked, forced to his knees, and examined by a nurse, while "Gallagher maintained a wrist bending technique on the Plaintiff throughout the entire assessment."[2]  (*Id.* at 5).  Plaintiff was ultimately returned to his cell.

Defendants offer a starkly different version of the facts, asserting that when Plaintiff refused to obey Gallagher's order to enter his cell, Plaintiff slipped his handcuffs and actively resisted.  (ECF No. 8-1, at 1-2).  They further assert that Plaintiff was never attacked, punched, "slammed on the hand," or choked.  (*Id.*).

Plaintiff filed a request for administrative remedy ("ARP") with the warden on April 22, 2011.  (ECF No. 26-2).  The warden dismissed the ARP, because "[i]nmates may not seek relief through the Administrative Remedy Procedure regarding

---

[2] Plaintiff's amended complaint is silent as to the nurse's gender.  In a previous filing, he specifies that the nurse's name is Meredith Rathcamp.  (ECF No. 29, at 5).  In their motion, Defendants acknowledge that Ms. Rathcamp is a woman.

disciplinary hearing procedures and decisions." Plaintiff then untimely filed an administrative appeal of this decision. (ECF No. 12-1).

Plaintiff filed a *pro se* complaint in this court on June 2, 2011 against Defendants Gallagher and Harris, alleging that he was subject to excessive force, in violation of his Eighth Amendment rights. (ECF No. 1). Plaintiff was proceeding *in forma pauperis*. (ECF No. 4). Gallagher and Harris filed a motion to dismiss, or for summary judgment (ECF No. 8), which was denied (ECF Nos. 17 and 18). Counsel was appointed for Plaintiff (*id.*), and Plaintiff filed an amended complaint (ECF No. 21). The amended complaint added Defendants Sharp and the State of Maryland, and additional claims for violations of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution; statutory claims under 42 U.S.C. §§ 1983 & 1988, and 18 U.S.C. § 245; and state common law claims for battery against all Defendants. Defendants filed a motion to dismiss the amended complaint, or, in the alternative, for summary judgment. (ECF No. 26). That motion was granted in part and denied in part on January 17, 2013. (ECF Nos. 34 and 35). Plaintiff's claims against the State of Maryland were dismissed, as were all claims against Defendants Gallagher, Harris, and Sharp in their official capacities, along with all claims for violations of the Fifth and Fourteenth Amendments. Remaining

are claims against the Officers in their individual capacities for common law battery and violations of the Fourth and Eighth Amendments; and a claim against Defendant Gallagher in his individual capacity for failure to supervise. Plaintiff's counsel filed a motion to withdraw as attorney (ECF No. 43), which was granted on September 25, 2013, leaving Plaintiff to proceed *pro se* (ECF No. 50). Defendants filed a motion for summary judgment on December 23, 2013. (ECF No. 55). In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the clerk of court mailed a letter to Plaintiff that day, notifying him that a dispositive motion had been filed and that he was entitled to file opposition material or risk entry of judgment against him. (ECF No. 56). Plaintiff moved for appointment of counsel which was denied. (ECF Nos. 60 and 61). On March 10, 2014, Plaintiff filed an opposition to Defendants' motion (ECF No. 62), to which Defendants replied on March 19, 2014 (ECF No. 63).

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden of showing that there

4

is no genuine dispute as to any material fact. However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine dispute for trial.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could

return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (*quoting Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

### A.   Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") generally requires a prisoner plaintiff to exhaust administrative remedies

6

before filing suit in federal court.  42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." (Emphasis added).  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Thus, the exhaustion provision plainly extends to Plaintiff's allegations.  Under the PLRA, Defendants must raise lack of exhaustion as an affirmative defense, and they bear the burden of proof on this issue. *Jones v. Bock*, 549 U.S. 199, 211-13 (2007).

In Maryland, filing an administrative remedy ("ARP") with the warden of the prison in which one is incarcerated is typically the first of three steps in the Administrative Remedy Procedure process provided by the Division of Correction to its prisoners.  If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction.  If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the

7

Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. 12.07.01.03.

Plaintiff filed an ARP which was dismissed because the warden concluded that Plaintiff was using the process to challenge his disciplinary hearing, which was not permitted by departmental regulations. Plaintiff appealed this decision to the Commissioner of Correction, but it was dismissed as untimely as it came over forty days after his ARP dismissal. Defendants previously argued that Plaintiff failed to exhaust administratively his claims because he has not offered any reason as to why his appeal was late and, additionally, he failed to take the next step in the process: appeal to the IGO. The undersigned rejected that argument, concluding that by being told that "no relief was available through the administrative process for the facts underlying his allegations, exhaustion was not required." (ECF No. 34, at 8); *Coley*, 2013 WL 210724, at *3. Therefore, Defendants had not shown as a matter of law that Plaintiff failed to exhaust his administrative remedies.

In their current motion, Defendants request the court to reconsider that conclusion because there was in fact a remedy available to the Plaintiff that offered the possibility of relief: filing the grievance directly to the IGO, which was available regardless of the availability of the ARP remedy. The IGO statute provides that if a prisoner has a grievance against

an official or employee of the Division of Correction, the prisoner may submit a complaint to the IGO within the time and in the manner required by regulation adopted by the IGO.  Md. Code Ann., Corr. Servs. § 10-206(a).  The usual three-step ARP process stems from subsection (b) of this law: "[i]f the Division of Correction has a grievance procedure applicable to the particular grievance" of a prisoner, then the IGO may require by regulation that the procedure be exhausted before submission of a complaint to the IGO.  Division of Correction regulations provide that the ARP may not be used for issues of disciplinary hearing procedures and decisions, but instead prisoners may appeal those decisions under a wholly separate procedure in accordance with regulation.  The ARP may be used for issues having to do with the use of force, however.  (ECF No. 55-3 § VI.A-C (Division of Correction Directive 185-002, effective Aug. 27, 2008)).  The IGO's regulations provide that where the ARP remedy procedure applies, a prisoner shall properly exhaust that procedure before filing a grievance with the IGO.  Md. Code Regs. 12.07.01.02(D).  Defendants argue that because Plaintiff's complaint challenges a disciplinary proceeding – which the ARP procedures do not apply to – Plaintiff's proper course was to file his grievance directly with the IGO.  Failure to do so means that Plaintiff has not exhausted administratively his claims.  While Defendants

acknowledge that they carry the burden on this issue, *Jones*, 549
U.S. at 211-13, they contend that Plaintiff has failed to
demonstrate that the IGO procedure was not available by showing
that "he was prevented, through no fault of his own, from
availing himself of that procedure." *Graham v. Gentry*, 413
F.App'x 660, 663 (4th Cir. 2011) (*citing Moore v. Bennette*, 517
F.3d 717, 725 (4th Cir. 2008)).

This argument is unconvincing.  Plaintiff was prevented
from availing himself of the IGO procedure seemingly through the
fault of the Division of Correction.  Plaintiff's ARP was
dismissed because it was determined that he was challenging the
results of a disciplinary proceeding; regulations state that
this must be done through the IGO, not the ARP.  At a glance
this determination seems completely incorrect: Plaintiff was not
challenging a disciplinary proceeding.  Instead he was plainly
challenging Defendants' use of force against him, a type of
grievance that the regulations explicitly permit be brought
through the ARP.  In their previous motion for summary judgment,
Defendants acknowledge that Plaintiff was correct to bring his
grievance through the ARP.  (ECF No. 26-1, at 5 ("The ARP was
applicable to [P]laintiff's complaint, because inmates 'may seek
relief through the [ARP] for issues that include . . . [u]se of
force.'") (*quoting* DCD 185-002.VI.A(6))).  Defendants seem to
contend that Plaintiff had the IGO procedure at his disposal

after his grievance was deemed (incorrectly) to be a challenge to a disciplinary proceeding.  That would be true if he was challenging his disciplinary hearing, as evidenced by the IGO regulations which require that, when filing an appeal from a disciplinary proceeding, a prisoner is to include all related paperwork, including the notice of inmate rule violation and disciplinary hearing, hearing record, appeal to the warden, and the warden's response to the appeal.  Md. Code Regs. 12.07.01.04.B(9)(b).

Defendants' appeal to *Blake v. Maynard*, No. 8:09-cv-02367-AW, 2012 WL 1664107 (D.Md. May 10, 2012), is unavailing.  That case involved a cleaner set of facts: prisoner's situation prompted an internal affairs investigation.  Per the applicable regulations, a prisoner whose case is subject to an internal affairs investigation cannot proceed *via* the ARP grievance process.  Consequently, he could proceed directly to the IGO. The prisoner admitted that he failed to pursue either the ARP or IGO grievance process and, consequently, Judge Williams held that he failed to exhaust administratively his claims.  *Id.* at *5-6.  But in *Blake*, the prisoner had both forks of the road open to him with no direction from the authorities - right or wrong - as to either.  He failed to take either road and was appropriately deemed to have failed to exhaust.  Here, by contrast, Plaintiff attempted to take the correct path, was

11

erroneously told he took a wrong turn, and now Defendants are arguing that his failure to take the other route is fatal to his claim, despite the fact that - according to a plain reading of the regulations - were he to go down that road, he would be summarily dismissed because a direct appeal to the IGO was not available.  Prisoners should not be punished for failing to file grievances that are not permitted by the authority's own regulations.   Defendants' motion for summary judgment on exhaustion grounds will be denied.

### B.  Plaintiff's Fourth Amendment Claim

Plaintiff asserts that Defendants stripping him naked, forcing him to his knees, and subjecting him to a medical exam at the hands of a nurse constitutes a violation of his Fourth Amendment rights.   The undersigned previously stated that "[s]trip searches of convicted persons do not amount to a violation of privacy rights, as long as the genitals of the persons being searched are not involuntarily and unjustifiably exposed to members of the opposite sex."  (ECF No. 34, at 17); *Coley*, 2013 WL 210724, at *7.   Defendants seize on this statement and contend that while Plaintiff alleges that he was completely unclothed in front of the female nurse, the video documenting the incident shows that the nurse inspected him while he was fully clothed and that the strip search occurred only after the nurse completed her assessment and left the cell.

Plaintiff, in response, acknowledges that he never saw the nurse, but he did hear her and smell her as the strip search began.

The parties' focus on to whom Plaintiff's genitals were exposed is understandable given the undersigned's previous statement, but it was incorrect to suggest that all strip searches of prisoners are permissible under the Fourth Amendment, no matter the time, place, manner, or justification, so long as a prisoner's genitalia are not involuntarily and unjustifiably exposed to members of the opposite sex. Instead, a strip search of a prisoner without exposure of his genitals to members of the opposite sex only means that there has not been a *per se* violation of privacy rights; there are plenty of circumstances where a strip search can constitute a violation of a prisoner's privacy rights even in the absence of genital exposure to the opposite sex. *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (when considering the reasonableness of a search under the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."); *McCreary v. Richardson*, 738 F.3d 651, 657 (5th Cir. 2013) ("clearly established in the abstract that a prison official must have a reasonable justification for strip searching a prisoner" (internal citation omitted)). "In *Bell*,

the Supreme Court held that a reasonableness inquiry requires a
court to balance the need for the particular search against the
invasion of the personal rights that the search entailed."
*Amaechi v. West*, 237 F.3d 356, 361 (4th Cir. 2001).   The
balancing requires a contextual analysis, looking at the scope
of the intrusion, the manner in which it was conducted, its
justification, and the place in which it was conducted.   *Id.*
(*citing Bell*, 441 U.S. at 559).   "Body cavity searches do not
violate the Fourth Amendment if reasonable and not motivated by
punitive intent."   *Bushee v. Angelone*, 7 F.App'x 182, 184 (4th
Cir. 2001) (*citing Bell*, 441 U.S. at 545-46).   The evidence
before the court consists of a video documenting the encounter
between Plaintiff and Defendants taken by a correctional
officer; a portion of the deposition transcript of Plaintiff;
and two declarations by correctional officers not named as
defendants.   The parties' differing versions of events were
submitted as part of the previous motions to dismiss or for
summary judgment.   The video shows the female nurse approaching
Plaintiff, asking him a few questions about his condition and
then leaving the frame.   The strip search is then undertaken.
The nurse is not seen or heard from for the remainder of the
video.   The declarations from the two correctional officers
state that the nurse was not present for the strip search.
Plaintiff, in his deposition, stated that he was completely

14

naked when the nurse arrived and when she left.  The video
conclusively demonstrates that Plaintiff was not stripped
searched in front of a member of the opposite sex.  But given
the conflicting stories as to the justification to subdue
Plaintiff and subsequently subject him to a strip search, there
is a genuine dispute as to whether the search was reasonable or
motivated by punitive intent.  Accordingly, Defendants' motion
for summary judgment as to Plaintiff's claims under the Fourth
Amendment will be denied.

> ### C.   Plaintiff's State Law Claims

Plaintiff alleges that the Defendants each acted
"negligently, wantonly, recklessly, and with deliberate
indifference, failed to properly supervise and failed to
intervene therein to prevent the aforesaid violations of the
Plaintiff's clearly established and then existing rights under
the laws and Constitution of the United States and other rights,
and failed to prevent harm to the Plaintiff."  (ECF No. 21 ¶
43).  Defendants construe this as a negligence claim and contend
that under the Maryland Tort Claims Act ("MTCA") they, as state
employees, enjoy statutory immunity.  Md. Code Ann., State Gov't
§ 12-104; Md. Code Ann., Cts. & Jud. Proc. § 5-552.  Plaintiff
replies by discussing the standards for qualified immunity.  The
undersigned has not understood Count I of the amended complaint
to be a claim for common law negligence, but instead for

violations of various constitutional rights. Plaintiff's arguments do nothing to dispel this belief and they will be construed accordingly. It should not be noted, however, that Defendants' characterization of the MTCA is too simplistic. The MTCA does not provide blanket immunity to state employees for tort claims: only immunity for tort claims if the employee has not acted with malice or gross negligence. Md. Code Ann., Cts & Jud. Proc. § 5-552(a)(4).

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendants will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge